**In the Matter of MAHURKAR DOUBLE LUMEN HEMODIALYSIS CATHETER PATENT LITIGATION.**

**No. MDL 853.**

United States District Court,
N.D. Illinois, E.D.

May 28, 1992.

See also 781 F.Supp. 1295.

Joseph N. Hosteny, Raymond P. Niro, John C. Janka, and Michael P. Mazza, Niro, Scavone, Haller & Niro, Chicago, Ill., for Sakharam D. Mahurkar.

Marvin A. Glazer, Cahill, Sutton & Thomas, Phoenix, Ariz., and Granger Cook, Jr. and Mark J. Murphy, Cook, Egan, McFarron & Manzo, Ltd., Chicago, Ill., for IMPRA, Inc.

H. Ross Workman, Brent P. Lorimer, and John C. Stringham, Workman, Nydegger & Jensen, Salt Lake City, Utah, for Kendall Med–West.

## OPINION

EASTERBROOK, Circuit Judge.[*]

After a settlement between Vas–Cath and Mahurkar, the initial adversaries in this patent case, only two accused infringers remain as parties: IMPRA and Kendall Med–West, a division of The Kendall Company. We are in the final stages of discovery, with depositions by the dozen. Trial is set for August 10.

On May 20 Kendall and its parent filed bankruptcy petitions in the bankruptcy court for the District of Delaware. Kendall had been planning the step for more than a year in consort with its major lenders. Kendall filed a bankruptcy petition "prepackaged" with a plan of reorganization to which these creditors had assented. The proposed plan restructures Kendall's debt obligations, which bear a rate of interest exceeding the going rate for money in the economy, while allowing all to avoid recognizing income (and paying tax) on the reduction of indebtedness.

Sakharam Mahurkar and Quinton Instruments Co., Kendall's adversaries in this patent litigation, hold contingent debt claims against Kendall. They were left out

---

[*] Of the Seventh Circuit, sitting by designation.

of the negotiations for the bankruptcy proceeding, first learning of the plans when they read an article in the *Wall Street Journal.* This court, too, was taken aback. Kendall did not mention the preparations at any time while the schedule was being discussed and set—did not mention it even by a secret filing that would have preserved whatever confidences were important to the plan. Instead Kendall took everyone by surprise, filing its papers in Delaware, walking out of the ongoing deposition of Dr. Mahurkar, and faxing this court (and its adversaries) a notice.

Kendall is standing on its rights under the automatic stay, 11 U.S.C. § 362, even though it says it expects the plan of reorganization to be approved by the end of June. According to the plan of reorganization, claims such as Mahurkar's will pass through unaffected. Kendall's action nonetheless throws the schedule in this court out of whack, awarding itself the extension that I have repeatedly refused to grant and raising questions about whether Kendall will be able to catch up in time to join the trial in August.

Although the automatic stay halts only litigation against the debtor in bankruptcy, Kendall instructed a *former* employee not to attend his deposition. Apparently in anticipation of the filing in Delaware, Kendall's lawyer instructed one of its current employees not to answer certain financial questions during a deposition, although this court, consonant with Fed.R.Civ.P. 30(c) ("Evidence objected to *shall be taken* subject to the objections."), had told counsel not to instruct witnesses to refrain from answering on any ground other than an assertion of privilege. I had offered to resolve disputes of any other kind by telephone to avoid exactly the sort of interruption that has occurred. Kendall's instruction not to answer had no support in § 362, for Kendall had not yet filed its petition in bankruptcy.

Disturbed by these tactics, Dr. Mahurkar filed a motion on May 21 seeking an order that Kendall cease its interference with discovery pertinent to the ongoing litigation with IMPRA. Recognizing the force of § 362, Mahurkar conceded that his dispute in this forum with Kendall is in stasis,

insofar as he seeks damages. But, citing numerous cases, Mahurkar asked me to rule that the automatic stay does not bar continued proceedings concerning Kendall's request for a declaratory judgment (on the ground that this is an action by rather than against the debtor) or his own counterclaim for an injunction, to the extent that Kendall's (asserted) infringement continues during the pendency of the bankruptcy proceeding. Naturally the first question is whether the forum in which an action is pending may decide for itself the effect of the automatic stay or instead whether the bankruptcy court has exclusive jurisdiction. Mahurkar cited a number of cases holding that the original forum may interpret § 362 and proceed to the extent that statute allows. Mahurkar asked me to do so.

On the afternoon of May 21 my staff called counsel for Kendall and instructed it to file a response by the close of business on May 26. Further conversations on May 22 conveyed to all counsel two additional decisions: Mahurkar's reply brief would be due on May 27, and I would hold oral argument at 10:00 A.M. on May 28.

Kendall filed its brief on May 26, disputing Mahurkar's interpretation of § 362. An orderly process was in train, leading to an orderly decision. Preferring a soliloquy to a dialog, Kendall began an adversary proceeding against Mahurkar and Quinton and at 2:30 P.M. on May 27 sought an *ex parte* order from the bankruptcy judge in Delaware. Mahurkar's counsel in Chicago had enough notice to engage a lawyer in Wilmington and fax him some papers, which arrived at 1:00 P.M. on May 27. This lawyer appeared at the hearing but conceded that he lacked time to read the papers and knew next to nothing about the patent litigation. Quinton was unrepresented. Kendall asked the bankruptcy judge to enjoin Mahurkar from filing his reply brief or presenting his request for decision to this court. Kendall presented a draft order to bankruptcy judge Helen S. Balick, who dated and signed the draft, giving no written reasons. (Her brief oral statement also is sketchy.)

What Kendall drafted for the bankruptcy judge contains formulaic and unreasoned recitations of irreparable harm (unfathomable, given that the expense of litigation is not irreparable injury, see *Petroleum Exploration, Inc. v. Public Service Commission,* 304 U.S. 209, 222, 58 S.Ct. 834, 841, 82 L.Ed. 1294 (1938); *FTC v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980); *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974)) and contains these commands:

> Defendants [Quinton and Mahurkar] are hereby ordered and/or restrained from taking any action or doing any act, other than by proper motion or other application before this Court to commence or continue any action against The Kendall Company, *et al.* in either the United States District Court for the Northern District of Illinois, Eastern Division, the United States District Court for the Central District of Utah, or the United States Bankruptcy Court for the District of Delaware with respect to the matters set out in the Patent Infringement Action, including, but not limited to, filing any reply brief, motions or memorandum of law, or conducting or participating in any type of discovery, except as to forthwith notify the Clerks of the courts listed above of the entry of an Order of this Court restraining any application by Quinton Instruments Company and/or Sakharam D. Mahurkar for any relief or discovery against The Kendall Company whatsoever with respect to the Patent Infringement Action....

In other words, the bankruptcy judge in Delaware not only asserted exclusive jurisdiction to determine the meaning of § 362 but also instructed counsel to remain silent during the hearing scheduled in this court. (Perhaps even showing up would be a prohibited "act" to "continue" the proceeding.) In forbidding Mahurkar and Quinton from "conducting or participating in any type of discovery" in the entire "Patent Infringement Action," this TRO also apparently halts the litigation with IMPRA. It did not, however, issue in time to prevent Mahurkar from filing his reply brief.

On learning of this preposterous order (I practically fell out of my chair, and I have a sturdy chair), I entered the following order of my own:

> Lest there be any misunderstanding about the telephonic instructions that have previously issued, I now issue my order in writing.
>
> Counsel for Kendall and Mahurkar are to be present in court tomorrow morning at 10:00 a.m. This is an order, not an invitation. Failure to appear will lead to sanctions.
>
> My instructions to appear and argue this case were issued last week. Any subsequent order from any other court is ineffectual. Kendall's ex parte application to the bankruptcy judge in Delaware appears to be an abuse of process. No bankruptcy court is authorized to instruct litigants in this court not to obey this court's orders. Any court has jurisdiction to determine its own jurisdiction, and this court unquestionably has the authority to determine what effect the bankruptcy stay has on the litigation. For the purpose of making that decision, the hearing will proceed as scheduled, and counsel for all parties are free to make whatever presentations they deem appropriate.

At the oral argument on May 28, Kendall's lawyers asserted that the TRO forbade Mahurkar's lawyers from making any oral argument in support of their motion. I ruled that any attempt to enforce Judge Balick's prohibition against the participation of Mahurkar's counsel in the ordinary course of proceedings here would be treated as a violation of my order of May 27, and thus contempt of court.

I shall have more to say about that rogue TRO. The first issue I take up, however, is whether I have any authority to interpret the automatic stay and decide for myself which actions may proceed here. Part II of this opinion discusses the TRO and explains why I am enjoining its enforcement. Part III discusses the effect of the automatic stay on this patent action. The final section sets out a formal injunction, binding on Kendall and all those in privity with it,

which will be entered in compliance with Fed.R.Civ.P. 65(d).

## I

■ Section 362(a) provides that a petition in bankruptcy "operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title". This statutory prohibition requires no judicial enforcement. But it requires interpretation. What is the "continuation ... of a judicial ... action or proceeding against the debtor"? Does it include declaratory judgment actions filed *by* the debtor? Discovery that may be relevant not only to actions against the debtor but also to actions against other parties? Actions against the debtor on account of violations of law (such as infringement of patents) that continue after the filing of the petition?

Someone must decide these questions. It might make sense to commit their decision exclusively to bankruptcy judges, who not only have greater familiarity with bankruptcy law but also alone possess the power to coordinate the many actions that may be pending against the debtor throughout the nation. (Surely this is not the only suit against Kendall, a substantial firm.) So, too, it might make sense to commit their decision to the forums in which the cases are pending, which may have the perspective needed to manage litigation that involves other parties—as this multidistrict action does—or may be in the best position to decide whether one of the numerous exceptions in § 362(b) pertains.

■ However such matters might come out on first principles (the statute itself is silent on the question), it is settled that both the bankruptcy court and the court in which the other litigation exists may construe the automatic stay. E.g., *Picco v. Global Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir.1990); *Brock v. Morysville Body Works, Inc.*, 829 F.2d 383, 387 (3d Cir.1987); *In re Baldwin–United Corporation Litigation*, 765 F.2d 343, 347 (2d Cir. 1985). Cf. *Board of Governors of the Federal Reserve v. MCorp Financial, Inc.*, —— U.S. ——, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991); *NLRB v. P*I*E Nationwide, Inc.*, 923 F.2d 506, 512 (7th Cir.1991) (assuming that bankruptcy courts do not have exclusive authority to construe § 362, but without separate discussion). *Baldwin–United* even held that a district court may forbid the resolution of such issues by the bankruptcy court, although the second circuit thought the exercise of that power imprudent in the case at hand.

*Morysville*, rendered by the court of appeals with jurisdiction over bankruptcy judges in Delaware, is of particular interest. Mahurkar's bankruptcy lawyer did not have time to read the papers, but he did cite *Morysville* (doubtless having been put on the trail by Chicago counsel, who had cited it in papers filed here). Kendall's lawyer did not deign to reply, and Judge Balick did not mention that case.

To be sure, most of the cases holding that bankruptcy judges lack exclusive jurisdiction to interpret § 362 involve suits by public agencies, seeking relief excluded by § 362(b)(4). But the reason why the automatic stay may (or does) not apply is unrelated to the question: "Which court decides?" All the cases I have found hold that each court may decide for itself. So far as I am aware, there is no contrary authority. This court accordingly not only has jurisdiction to determine its jurisdiction, *Willy v. Coastal Corp.*, —— U.S. ——, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992); *Harmon v. Brucker*, 355 U.S. 579, 582, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958); *Land v. Dollar*, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947); but actually possesses the authority to construe § 362 and decide what effect that statute has on the multidistrict patent litigation.

## II

■ Kendall sought and obtained a TRO based on the opposite premise. Kendall's adversary complaint asserts that the very filing of a motion in this court seeking an interpretation of § 362 violates that section, and that "[t]hese violations of the automatic stay by the Defendants are will-

ful and entitle Kendall to recover actual damages, including but not limited to, costs, attorneys' fees, interest and punitive damages." Kendall did not bring *Morysville* to the attention of the bankruptcy court. At oral argument before Judge Balick, Kendall's lawyers repeatedly treated litigation to determine the extent of the automatic stay as identical to a violation of § 362, which could be true only if the bankruptcy judge possesses exclusive jurisdiction.

■ Bankruptcy judges possess authority, by a combination of 11 U.S.C. § 105(a) and 28 U.S.C. § 157(b)(2), to issue injunctions in core proceedings. Enforcement of the automatic stay against fresh litigation or the continuation of old litigation on the merits is a core proceeding. *In re Johns–Manville Corp.*, 801 F.2d 60 (2d Cir.1986); cf. *In re Davis*, 730 F.2d 176 (5th Cir.1984) (declining to issue a writ of prohibition against such an injunction). But extension of the statute to forbid any other court from cogitating the meaning of § 362, and proceeding to the extent that statute allows, is not a core proceeding. This multidistrict patent litigation is not a core proceeding by any stretch of the imagination, and I think it beyond cavil that I have authority to decide, for example, whether Mahurkar is entitled to take discovery from former Kendall employees that may be relevant to the action against IMPRA. Yet Judge Balick issued an order forbidding Mahurkar to file a reply brief addressing that subject (among others) or argue his motion orally.

For one federal court to issue an injunction forbidding litigation in another is extraordinary, given principles of comity among coordinate tribunals. E g., *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); cf. *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). For a bankruptcy judge to issue an injunction with the effect of preempting resolution of a pending motion in a district court is unheard of. Well, perhaps not *un*-heard of. I found one case in which a bankruptcy court did so, and the district judge brushed the order aside in derision, treating the order as so patently unauthorized that no further explanation was warranted. *Lower Brule Construction Co. v. Sheesley's Plumbing & Heating Co.*, 84 B.R. 638, 644 (D.S.D.1988).

For reasons I elucidate below, Mahurkar asked for too much in this court. The automatic stay blocks most of the relief he wants. Yet arguing for a generous view of one's entitlements under the law is not the same as violating the law. There is all the difference in the world between a litigant who barges ahead as if the bankruptcy filing never took place and a litigant who conscientiously brings the filing to the attention of the court and asks for interpretation and instruction. Mahurkar honorably took the latter course. Kendall, by contrast, treated the two as identical and attempted to avoid decision by a tribunal where the issues had been fully briefed in favor of a decision elsewhere after a one-sided spiel. Kendall's course is an abuse of the judicial process and will not be tolerated.

■ Section 1651(a) of the judicial code permits district courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." An injunction forbidding interference with on-going proceedings is appropriate (indeed, necessary) in aid of this tribunal's jurisdiction. The only potential bar lies in principles of issue and claim preclusion (res judicata and collateral estoppel) as a result of the bankruptcy judge's decision. But this is not a final decision, and unreviewable orders (a TRO is not reviewable by appeal) lack preclusive effect. I conclude that § 1651 gives me authority to enjoin the parties from enforcing the TRO, and that no other legal principle forbids such relief.

■ Because of the collateral bar doctrine, even legally erroneous injunctions must be obeyed until vacated or stayed. *Pasadena City Board of Education v. Spangler*, 427 U.S. 424, 439–40, 96 S.Ct. 2697, 2706–07, 49 L.Ed.2d 599 (1976). It was to free Mahurkar's counsel from their (justified) fear that they had been forbidden to present oral argument in this court that I issued my order the afternoon of

May 27. When at oral argument bankruptcy counsel for Kendall insisted that *despite* my order Mahurkar's lawyers still could not speak, I replied that I would enjoin enforcement of the TRO, if that was what it took. To ensure that the collateral bar doctrine poses no risk to lawyers who have done no more than ask for a decision by a court, I shall make that order formal at the end of this opinion. I shall, moreover, direct Kendall to withdraw its ludicrous demand for punitive damages and other relief said to be in order to redress the sin of asking me to construe an act of Congress.

This unseemly war between two federal courts was occasioned by an unnecessary, incomplete, and deceptive filing by Kendall in the bankruptcy case. Lawyers who make *ex parte* applications have a special duty of candor in light of the one-sided nature of the presentation. Yet counsel sought to (and did) confuse rather than enlighten the bankruptcy judge. Shame on the lawyers responsible.†

### III

■ Mahurkar asks me to hold that three subjects lie outside the automatic stay: Kendall's request for a declaratory judgment, its own request for an injunction against ongoing sales of catheters, and its demand that Kendall not interfere in discovery bearing on IMPRA. Mahurkar also contends that I have the authority to make equitable exceptions to the automatic stay and should use that authority to keep discovery going while a prepackaged bankruptcy—which is not supposed to disrupt the debtor's business—winds up.

■ Section 362(a) admits of no "equitable" exceptions; it says that the stay applies "[e]xcept as provided in subsection (b) of this section", and subsection (b) contains no grant of equitable power to disregard subsection (a). There *is* an equitable power to release or modify the stay, § 362(d), (f), but only the bankruptcy court may exercise this power. Mahurkar should present his request for modification to the only tribunal that can entertain it. (Given the prepackaged nature of the reorganiza-

tion, the parties should be able to agree that discovery can continue here, leading to a modification of the stay. But this is for Judge Balick, not me.)

Declaratory relief is the first issue. Kendall began this litigation, seeking a declaratory judgment that its catheters do not infringe Mahurkar's patents. Counterclaims for damages and an injunction came later. Section 362(a)(1) for bids continuation of an "action or proceeding *against* the debtor" (emphasis added), and Kendall's own suit is not an action "against" the debtor. See *Martin–Trigona v. Champion Federal Savings*, 892 F.2d 575, 577 (7th Cir.1989); James McCafferty, *The Effect of Bankruptcy on the Debtor's Pending Litigation*, 93 Comm.L.J. 214, 218–21 (1987) (citing other cases). Once again a case from the third circuit (whose jurisdiction includes Delaware) is instructive. After reciting the language of the statute, the court continued:

> All proceedings in a single case are not lumped together for purposes of automatic stay analysis.... Within a single case, some actions may be stayed, others not. Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, crossclaims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.

> Thus, within one case, actions *against* a debtor will be suspended even though closely related claims asserted *by* the debtor may continue.

*Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir.1992) (emphasis in original). Disaggregating this case produces three claims: by Kendall for declaratory relief, against Kendall for damages, and against Kendall for an injunction.

■ True enough, Mahurkar's counterclaims have become the center of attention. But "whether an action is by or against a debtor is determined by the debtor's status at the time the action was begun, not by

---

† In the interest of protecting reputations, I note that Kendall's lawyers in the patent action do not represent it in the bankruptcy action. Ken-

dall is represented in the bankruptcy case by Hale & Dorr of Boston and by Young, Conaway, Stargatt & Taylor of Wilmington.

who was ahead when the bankruptcy petition was filed." *In re Berry Estates, Inc.*, 812 F.2d 67, 71 (2d Cir.1987). Accord, *Maritime Electric*, slip op. 20; *St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir.1982). So far as the literal meaning of § 362(a)(1) is concerned, this court may proceed to decision on the declaratory judgment action as if no bankruptcy proceeding were pending. And the Supreme Court champions literalism in interpretation of the bankruptcy code. E.g., *Taylor v. Freeland & Kronz*, — U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Connecticut National Bank v. Germain*, — U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

■ That a court has the raw power to do something does not imply that it should, however. Section 362(a)(1) distinguishes actions against a debtor from actions by the debtor because actions by the debtor usually produce recovery for the estate (or leave its value unaffected). No-risk propositions with the debtor in control do not present any of the concerns that lead to collective proceedings, such as races among creditors to dismember assets or jump the priority queue. As a practical matter, however, Kendall's declaratory judgment action exposes the estate to exactly the same risk as Mahurkar's counterclaims: to lose the action is to suffer a judgment that Kendall infringed the patents. Concrete relief might await the lapse of the automatic stay, but the writing on the wall would be as ominous as a formal opinion deciding the entire case on the merits in Mahurkar's favor. Whether I ought to proceed on the declaratory judgment action depends, then, on whether Mahurkar is right in saying that injunctive actions lie outside of § 362(a)(1).

Mahurkar has two theories: first, that a suit seeking an injunction is not a "judicial ... action or proceeding" within the meaning of § 362(a)(1); second, that even if it is, a court may issue injunctive relief against wrongs that continue after the filing of the petition, because such post-petition conduct does not entail an action that "was *or could have been* commenced before the commencement of the case under this title" (emphasis added).

These two approaches collapse to the same thing, because an injunction should not issue unless wrongful conduct is ongoing or impending. Only post-bankruptcy acts (or threats) need concern us. A reading of § 362 leads me to reject Mahurkar's arguments whichever way they are phrased.

Distinctions between law and equity were abolished with the institution of the Rules of Civil Procedure in 1938. See Fed. R.Civ.P. 2. The Bankruptcy Code of 1978, following modern practice, speaks of an "action or proceeding" rather than an action at law or equity. Nothing in § 362(a)(1) suggests any difference between legal and equitable relief. Section 362(b) supports this conclusion, for a number of its subsections exclude from the stay certain equitable proceedings. These exceptions are unnecessary if § 362(a) does not apply in the first place to requests for injunctions. And the continuation during bankruptcy of conduct (such as the sale of catheters) begun beforehand is most certainly one in which an action "was or could have been commenced before the commencement of the case under this title". *This* action could have been, and was, commenced before Kendall filed its petition in bankruptcy.

For what it is worth, I think that this literal interpretation is not only good law but also good sense. Bankruptcy is a collective proceeding, one in which creditors divide claims while the court attempts to maximize the total value of the assets. *Covey v. Commercial National Bank of Peoria*, 960 F.2d 657, 661–62 (7th Cir.1992); *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989); *In re Iowa R.R.*, 840 F.2d 535 (7th Cir.1988); *Boston & Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562 (7th Cir.1986). One pressing task is to prevent creditors' actions that grab one aspect of the business and squeeze it for value that, while assisting a single creditor, may depress the collective value of the assets. Injunctions requiring debtors to abandon one part of their business or dramatically change their methods of doing business have a high holdup value for creditors and therefore may lead to this unfortunate consequence.

None of this implies that debtors in bankruptcy may violate federal law with impunity, selling patented products or, say, going into the cocaine distribution business. Cf. Douglas G. Baird, *The Elements of Bankruptcy* 194–98 (1992). Damages for wrongs done during the bankruptcy proceeding are administrative claims, and thus paid in full most of the time. The bankruptcy judge may enjoin ongoing wrongs, or release the automatic stay to allow another court to consider claims that debtors are violating the law. Public agencies may seek redress under § 362(b)(4). But the bankruptcy court is the clearinghouse for private actions, and it has yet to approve Mahurkar's request to pursue his demand for an injunction. I hold that litigation on Mahurkar's request for an injunction is barred by the automatic stay. From the discussion above it follows that I also will stay proceedings in Kendall's action for a declaratory judgment.

Having resolved the "which court?" issue in Part I on the basis of precedent, I owe the parties a few words about the precedents they have earnestly pressed on me. A number of district courts hold that the stay does not bar injunctions, but almost all of these decisions rely either on the 1898 Act (which distinguished "debts" and "damages" from other claims) or on cases interpreting the 1898 Act. E.g., *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F.Supp. 899 (E.D.N.Y.1988); *Steak & Brew, Inc. v. Makris*, 177 U.S.P.Q. 412 (D.Conn.1973); *In re Shenberg*, 433 F.Supp. 677 (N.D.Ill.1977); *Brennan v. T & T Trucking, Inc.*, 396 F.Supp. 615 (N.D.Okla.1975). These cases are uninformative in litigation under a portion of the 1978 Code, § 362(a)(1), that changed dramatically. Although *Bambu* was decided under § 362(a), it relied only on older cases and is unpersuasive. Two other cases under the 1978 Act, *Doskocil Cos. v. C & F Packing Co.*, No. 89 C 600 (N.D.Ill. July 26, 1990) (Holderman, J.), and *In re Vylene Enterprises, Inc.*, 63 B.R. 900, 906–07 (Bankr.C.D.Cal.1986), also are incompletely reasoned, and I am unpersuaded.

No authority at the appellate level supports Mahurkar's argument. Cases such as *In re Gull Air, Inc.*, 890 F.2d 1255 (1st Cir.1989), do not support a general rule that the automatic stay does not apply to post-bankruptcy acts. The FAA canceled Gull Air's landing slots at an airport on account of non-use. Using the slots was a condition of the property interest, and the court held, consistent with many cases showing that bankruptcy takes property interests as it finds them, that this non-bankruptcy rule applies within the bankruptcy case. See *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Chicago Board of Trade v. Olsen*, 262 U.S. 1, 43 S.Ct. 470, 67 L.Ed. 839 (1923). Moreover, the non-use began (if a "non" something can be said to "begin") and the slots were reallocated after the filing of the bankruptcy petition, and thus could not have been the subject of pre-bankruptcy administrative action. Kendall has been making these catheters for years, and the litigation long antedates the bankruptcy. I hold, therefore, that the automatic stay applies to the request for an injunction.

We come, then, to discovery in the multidistrict patent case. Section 362(a)(1) applies only to actions against the debtor. At oral argument, counsel for Kendall conceded that the automatic stay does not affect discovery regarding IMPRA, and that Kendall is obliged to participate to the extent it would be as a non-party. Related litigation goes on without the debtor. *Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir.1983).

That concession, which I believe correctly states the law (although there are no cases on point), means that Mahurkar is entitled to at least some of the relief he seeks. Kendall has no ground to interfere with or disrupt discovery that is calculated to lead to evidence admissible against IMPRA. That a given witness used to work for Kendall (or still works for Kendall) is irrelevant, if the discovery has utility other than to facilitate recovery against Kendall.

Working out the details will require a degree of cooperation among counsel that is sadly missing at the moment. Bickering has been at a high level throughout the

case, and Kendall's effort to forbid me from even considering Mahurkar's request (and to penalize its lawyers if they argued their motion) did not exactly endear Kendall's lawyers to Mahurkar's. I will be available by telephone to resolve any disputes as they arise, and will issue orders as the need arises clarifying the permitted scope of discovery.

■■■ One final issue. Kendall's prebankruptcy instructions to the witness Scahill not to answer certain financial questions violated my order that only privilege is a ground for issuing such instructions. Kendall attempts to justify this by insisting that Scahill's answers would have revealed terms of the proposed reorganization in violation of the securities laws. Kendall does not specify which of the many securities laws, and this defense of its instructions is risible. The securities laws forbid withholding certain material information, or trading while information is unavailable to the public, but never forbid *revealing* information! If disclosing details of a reorganization plan violates the securities laws, how did Kendall manage to negotiate terms with its (other) creditors?

I can see Kendall's concern that financial information not be disclosed prematurely, but (a) the deposition was being conducted under the terms of my protective order, and (b) Kendall was at liberty to apply to me by telephone for additional protection. Instead it engaged in self-help. That violation of my orders (and of the Rules of Civil Procedure) cannot go unnoticed. I therefore direct Kendall to make Scahill available for re-deposition, at its own expense (including the legal fees borne by Mahurkar's lawyers). Kendall can, I suppose, contend that even this remedy for a prebankruptcy delict is barred by the automatic stay. But I remind Kendall, and its lawyers, that sanctions in discovery may run against counsel personally. Fed. R.Civ.P. 37(a)(4). Kendall's lawyers are not debtors in bankruptcy and so are outside the stay. I am indifferent to whether Kendall pays these costs or its lawyers pay; one way or the other, Mahurkar is entitled to be reimbursed, and without waiting for the conclusion of the bankruptcy proceeding.

## IV

I now make the following orders, which will also be entered as a separate injunction complying with Rule 65(d).

1. The Kendall Company, its officers, agents, and all those acting in concert with them and having actual knowledge of this order, are permanently enjoined from enforcing or attempting to enforce the temporary restraining order issued by the United States Bankruptcy Court for the District of Delaware on May 27, 1992, in adversary proceeding No. A-92-57.

2. The Kendall Company shall withdraw adversary proceeding No. A-92-57.

3. The Kendall Company shall institute no further litigation in any court designed to prevent Sakharam D. Mahurkar or Quinton Instruments Company from filing motions in this court seeking an interpretation of 11 U.S.C. § 362 and any relief allowed by that statute and otherwise authorized by law.

4. The Kendall Company shall immediately transmit copies of this opinion and injunction to the United States Bankruptcy Court for the District of Delaware, to be lodged in bankruptcy case No. 92-667 as well as adversary proceeding No. A-92-57.

5. The Kendall Company, its officers, agents, and all those acting in concert with them and having actual knowledge of this order, are permanently enjoined from interfering with or obstructing discovery in the ongoing litigation among IMPRA, Mahurkar, and Quinton.

As for this litigation: (a) Mahurkar's request for damages and an injunction against Kendall is stayed by virtue of § 362(a) until its automatic expiration (following confirmation of the plan of reorganization) or its modification by the bankruptcy court. (b) Kendall's request for a declaratory judgment is not automatically stayed, but I nonetheless halt all proceedings in that action so long as the automatic stay bars litigation of the counterclaim seeking damages and an injunction. (c) Discovery and all other proceedings shall continue in the litigation among IMPRA, Mahurkar, and Quinton as if Kendall were

an interested non-litigant. In particular, this means that Mahurkar may take depositions of Kendall's former (and current) employees, other than depositions under Fed. R.Civ.P. 30(b)(6), limited to the discovery of evidence bearing on the IMPRA litigation. Motions for summary judgment in the dispute among IMPRA, Mahurkar, and Quinton will be resolved in the ordinary course, just as if Kendall were no longer a party to the litigation. Kendall is free, however, to file any briefs it wants in these matters, just as if it were an *amicus curiae*. All discovery and other proceedings against Kendall and its experts are stayed until the lifting or modification of the automatic stay. Mahurkar shall give Kendall timely notification of any depositions that might collaterally affect its interests during the period of this stay, and shall promptly notify IMPRA of any depositions, already noticed, that Kendall believes may proceed under this order to obtain evidence concerning IMPRA.