**ADVANCED COMPUTER SERVICES OF MICHIGAN, INC., d/b/a Advanced Computer Services; MGM Associated, Inc., d/b/a Business Systems, Inc.; Data Systems Support, Inc.; Basic System Services, Inc.; React Computer Services, Inc.; Pacific React Services, Inc.; and Total Support Incorporated, Plaintiffs, Counter-claim Defendants,**

v.

**MAI SYSTEMS CORPORATION, Defendant, Counter-claim Plaintiff.**

**Civ. A. No. 93 CV 667.**

United States District Court, E.D. Virginia, Alexandria Division.

Dec. 13, 1993.

Nathan Vance Holt, Jr., Douglas E. Rosenthal, Douglas B. Rutzen, Grace W. Lawson, Coudert Brothers, Washington, DC, Ronald S. Katz, Janet S. Arnold, Coudert Brothers, San Francisco, CA, for plaintiffs.

Paul James Kennedy, Kip Schwartz, Graham and James, Washington, DC, Elliott J. Stein, Gen. Counsel, MAI Systems Corp., Irvine, CA, for defendant.

### MEMORANDUM OPINION

ELLIS, District Judge.

#### I.

This copyright and anti-trust action presents the seldom-litigated question whether the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a), applies to stay or preclude an action seeking only declaratory and injunctive relief with respect to activity that commenced pre-petition and continues post-petition. For the reasons that follow, the Court concludes that the § 362(a) automatic stay bars claims for declaratory and injunctive relief, as well as claims for monetary relief and that the stay also bars claims based on conduct that commenced pre-petition and continues into the post-petition period.

#### II.

Defendant MAI Systems Corporation ("MAI") is a Delaware corporation with its principal place of business in Irvine, California. Until recently, MAI was engaged in the business of manufacturing and selling various minicomputers, including the Mpx and Spx model series ("MAI computers"). In addition, MAI has always been, and continues to be, engaged in the business of maintaining and servicing its computers. The worldwide market for service and maintenance of MAI computers produces revenues in excess of $50 million dollars per year. Approximately 90% of this market is controlled by MAI, while plaintiffs, seven relatively small independent service organizations who have competed in this market for years, collectively share most of the remaining 10% of the market.

In April 1993, MAI filed for bankruptcy protection and reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* A month later, on May 20, 1993, plaintiffs filed their three-count anti-trust complaint in this case, asserting (1) *per se* tying, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, (2) rule of reason tying, in violation of the same statute and (3) monopolization, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. It is important, for purposes of resolving the question at bar, to understand the factual allegations plaintiffs make in support of their claims. These allegations, which are assumed true for purposes of this matter, may be succinctly summarized as follows.

MAI computers are unique; their parts and operating system software do not work in other manufacturers' minicomputers. Purchasing MAI computers requires a substantial financial investment. With proper maintenance and service, a new MAI system has a useful service life of at least five (5) years. Because special training is required to maintain MAI systems, purchasers of MAI computers have limited choices in selecting a maintenance and service firm; they must select either MAI or another firm, including any of plaintiffs, that specializes in the servicing and maintenance of MAI computers. Firms without the technical training or skill in maintenance and service of MAI computers or without an inventory of MAI parts cannot adequately meet the maintenance and service needs of MAI computer owners.

MAI claims to have developed unique operating system software designed to provide the basic commands to operate MAI computers. According to MAI, this unique software enjoys federal copyright protection.[1] Since MAI licenses, but does not sell, this software, its authorized use is limited to MAI and MAI's licensees. Significantly, authorized use of the software, in MAI's view includes "loading" or "booting" the operating system software by turning the computer on. It is further MAI's view that any use of the software by plaintiffs, who are unlicensed, including simply "loading" or "booting" the software by turning the computer on, constitutes unauthorized use prohibited by law.

Plaintiffs allege that MAI has developed and engaged in a plan to restrict competition in the market for the maintenance and repair of MAI computers by refusing to authorize plaintiffs and other independent service organizations to load and use the MAI operating system software in connection with servicing or repairing MAI computers. Plaintiffs also allege that MAI, pursuant to this plan, sent a "cease and desist" letter dated April 29, 1993 to plaintiffs and other independent service organizations. This letter cited *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511 (9th Cir.1993), a decision favorable to MAI,[2] and demanded that all independent service organizations immediately cease and desist from any activity involving copying of MAI's operating system software, including "loading" or "booting" the software.

Based on the facts alleged, plaintiffs contend that MAI is unlawfully tying the sale of its copyrighted operating system software (the tying product) to the sale of maintenance and repair services for its computers (the tied product). Plaintiff further alleges that MAI is exploiting the complete market power it enjoys over the sale of its copyrighted software to distort and preclude competition in the tied product market, namely the market for maintenance and repair services for MAI computers. This tying arrangement, according to plaintiff, (i) "has harmed and is harming competition in the market for the tied product" and (ii) "has foreclosed and is foreclosing a substantial volume of commerce in the market for the tied product." Plaintiffs also claim that MAI's tying arrangement "has caused and is causing injury to both buyers and sellers in the market."[3] Plaintiffs finally claim that they have lost, and are continuing to lose, profits as a result of the tying arrangement, which they contend is both a *per se* and a rule of reason violation of § 1 of the Sherman Act, as well as an abuse of market power amounting to monopolization proscribed under § 2 of the Sherman Act. In sum, the thrust of the complaint is that MAI is impermissibly using its copyrights to preclude competition in MAI computer maintenance and repair.

MAI answered by denying the complaint's legal claims. But more than this, MAI also filed a six-count counterclaim, the thrust of which is that plaintiffs' efforts to compete in the MAI computer service and repair market really amount to infringement of MAI's software copyrights, misappropriation of MAI's trade secrets, interference with MAI's business relations with its present and prospective customers and infringement of MAI's trademarks. Counterclaim relief sought by

---

1. MAI's answer and counterclaim identifies seven copyright registrations applicable to the operating system software.

2. In *Peak*, MAI sued Peak Computer, Inc., an independent service organization that provided maintenance and repair services to MAI computer owners. Specifically, MAI asserted copyright infringement claims against Peak for alleged unauthorized use of MAI's software in the course of providing hardware maintenance services to owners of MAI computers. The Ninth Circuit, *inter alia*, held that a computer service company engaged in unlawful copying when it loaded copyrighted software into a computer's random access memory. *MAI Systems Corp.*, 991 F.2d at 517–19.

3. Specifically, the complaint, *inter alia*, alleges that:

> a. Purchasers of MAI operating system software have been and are being wrongfully forced to buy MAI's hardware service;
> b. MAI's competitors have been and are being wrongfully prevented from selling hardware service to these purchasers;
> c. Prices for the tied product have been and are higher than they would be in a competitive market; and
> d. Supply of the tied product has been and is lower than it would be in a competitive market.

MAI includes compensatory and punitive damages, as well as injunctive and declaratory relief.

Because the bankruptcy petition antedated the filing of this action, MAI sought early dismissal, citing § 362(a). This effort did not succeed, as the court then presiding over this case considered that the issue should await resolution, pending discovery on the question whether plaintiffs had knowledge of MAI's activities, such that this action could have been instituted pre-petition. As reflected in this Court's resolution of the issue, plaintiffs' knowledge or awareness is immaterial.

### III.

The question at bar is whether the § 362(a) automatic stay bars this suit, which seeks only declaratory and injunctive relief. Since this question is about the applicability of a statute, the starting point in the analysis must be the terms of the statute itself. *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975).[4]

The pertinent part of § 362(a) provides that the filing of a bankruptcy petition operates as a stay, applicable to all entities, of

(1) the commencement or continuation, including the issuance or employment of process, of a judicial ... action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy proceeding].

On its face, the statute seems applicable, for the complaint in this case is plainly "a judicial ... action or proceeding against the debtor." Yet this is far from the whole story, for this case includes counterclaims as well as claims and it is appropriate to "disaggregate" the various claims and counterclaims when determining whether the

§ 362(a) stay applies. *See Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1992). Moreover, plaintiffs also contend that § 362(a) does not apply to the complaint because only equitable and declaratory relief are sought, which relief would not cause the "evil" sought to be prevented by the stay, namely disruption of the debtor's business and a disorderly scramble for the debtor's remaining assets. Finally, plaintiffs argue that the automatic stay is inapplicable because the injunctive relief sought is aimed only at post-petition conduct. Thus, say plaintiffs, the complaint is not a case that "could have been brought" prior to the bankruptcy petition. It follows from this that analysis should proceed first by "disaggregating" the claims in the case at bar and then considering whether either of plaintiffs' arguments against the application of the stay are valid as to the "disaggregated" claims.

"Disaggregation" here is easy. The complaint's three claims may be treated together because they are based on the same alleged conduct and are collectively the basis for seeking the same equitable and declaratory relief. The counterclaim, to be sure, is based on the same conduct as the complaint and raises some of the same issues. Even so, it merits separate treatment simply because, unlike the complaint, it is advanced by the debtor.

Focusing first on the complaint, the question is whether this is a "judicial action ... against the debtor" that could have been commenced prior to the filing of the petition. The answer, despite plaintiffs' arguments, is that it is. There is no merit to the argument that a suit for injunctive and declaratory relief is an equitable suit and not a "judicial action" as to which a stay is applicable. This argument, as Judge Easterbrook noted in a quite remarkable, but generally apposite case, ignores (i) the abolition of the law-equity dichotomy in federal law and proce-

---

4. There is no issue as to this Court's authority to resolve this question, for it is sensibly settled that both the bankruptcy court and the court in which the action against the debtor is pending may decide the applicability of the § 362(a) stay. *E.g., Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir.1990); *N.L.R.B. v. Edward*

*Cooper Painting, Inc.,* 804 F.2d 934, 938 (6th Cir.1986). *In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 347 (2d Cir.1985); *see also Willy v. Coastal Corp.,* —— U.S. ——, ——, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992) (courts have jurisdiction to determine their own jurisdiction).

dure,[5] (ii) the presence elsewhere in the statute (§ 362(b)) of other explicit exceptions for certain equitable proceedings and (iii) the (therefore especially significant) absence of any explicit exception in § 362(a) for equitable relief. *See Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969. 976 (N.D.Ill.1992). Also meritless for the same reasons is the argument that no stay is appropriate because only post-petition conduct is involved. Judge Easterbrook correctly noted that the two arguments—(i) that the stay does not apply to equitable relief and (ii) that the stay does not apply to suits seeking relief only as to post-petition conduct—"collapse to the same thing, because an injunction should not issue unless wrongful conduct is ongoing". *Matter of Mahurkar,* 140 B.R. at 976. It is, moreover, quite clear that the complaint could have been commenced during the pre-petition period, for the alleged anticompetitive conduct on which it is based, as the *Peak* decision reflects, antedated MAI's bankruptcy filing. In sum, then, the § 362(a) automatic stay, by is plain terms, operates to bar the complaint in this case, a result supported by well-reasoned authority. *See Matter of Mahurkar,* 140 B.R. at 969.[6]

■ Plaintiffs here also argue that permitting the stay to operate here is contrary to public policy because the result allows MAI to continue socially harmful, illegal anticompetitive conduct. This argument is not without force. It ultimately fails, however, because there are other ways by which plaintiffs could seek to halt MAI's putatively illegal conduct. Thus, the bankruptcy judge can lift the stay (*see* 11 U.S.C. § 362(b)) and enjoin the conduct or, having lifted the stay, permit another court to do so. Also, public agencies may seek relief from the bankruptcy court pursuant to § 362(b)(4). All this reflects Congress' intention under the Bank-

ruptcy Code to allow bankruptcy courts to be the gate keepers for actions against debtors in bankruptcy.[7] Given this, there is no merit to the view that the automatic stay applied in this context contravenes public policy by immunizing MAI.

■ Although the claims in the complaint are subject to the § 362(a) automatic stay, the same result does not obtain with respect to the counterclaim. It is brought by the debtor, not against the debtor. By its plain terms, § 362(a) has no application to a debtor's claim. *See Maritime Elec. Co.,* 959 F.2d at 1204; *Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.,* 682 F.2d 446, 448 (3rd Cir.1982); *Matter of Mahurkar,* 140 B.R. at 975–76. In this regard, it is interesting to note, as plaintiffs suggest, that it appears that all of the issues the complaint raises would be litigated and resolved in connection with the disposition of the counterclaim, even assuming the complaint is subject to the automatic stay. But because the complaint, having been filed in the face of the automatic stay, may not be valid, plaintiffs, for the time being, and with the Court's blessing, have elected to seek relief from the stay from bankruptcy court. Also still open as a possibility, MAI suggests, is to add plaintiffs as parties to an essentially similar action pending in Delaware and stipulate that all discovery taken in the Virginia action is usable in the Delaware action. At this point, however, plaintiffs have chosen to return to the Bankruptcy Court for relief. Further action here will await the results of that effort.

## IV.

Events overtook preparation of this opinion. By order dated December 8, 1993, the Delaware Bankruptcy Court annulled the stay. The Bankruptcy Court considered it

**5.** *See e.g.,* Rule 2, Fed.R.Civ.P.

**6.** As Judge Easterbrook correctly notes, contrary authority based on the pre–1978 Bankruptcy Code in inapposite given the thoroughgoing revision of the Code in 1978. *See Matter of Mahurkar,* 140 B.R. at 977. And the same is true with respect to post–1978 decisions that rely on the older cases. *See, e.g., In re Shenberg,* 433 F.Supp. 677 (N.D.Ill.1977). Other contrary

post–1978 decisions under § 362(a) are simply not persuasively reasoned. *See* cases cited at 140 B.R. at 977.

**7.** Worth noting, too, is that a suit for equitable relief against a debtor imposes litigation costs and burdens on the debtor and therefore has the effect of depleting a debtor's assets, even though no damages are sought.

necessary to annul the stay rather than merely lift it because the complaint, filed after the bankruptcy petition, may be viewed as never having been effective to commence this action.[8] By annulling the stay, the Bankruptcy Court acted prudently to remove any doubts about the viability of this action which will now proceed.

An order will issue promptly setting the schedule for the remainder of this case, including dates for argument on pending summary judgment motions and dates for trial.

8. For a listing of cases analyzing whether proceedings in violation of the § 362(a) automatic stay are void *ab initio,* see *Maritime Elec. Co.,* 959 F.2d at 1206–07.