## In re RICHARD B. VANCE AND COMPANY, Debtor.

### No. 02–80457.

United States Bankruptcy Court, C.D. Illinois.

Feb. 4, 2003.

---

**694**

Gary T. Rafool, Sumner Bourne, Peoria, IL, for debtor.

## OPINION

THOMAS L. PERKINS, Bankruptcy Judge.

Before the Court are both the original motion and the supplemental motion filed by the Debtor, Richard B. Vance and Company (DEBTOR), to show cause and for damages against Raquel C. Nunez–Valdes ("RAQUEL") and her attorneys, Allan J. Fedor ("FEDOR") and Richard R. Logsdon ("LOGSDON"), for pursuing, postpetition and without stay relief, an arbitration proceeding which was instituted against the DEBTOR and Robert F. Daly ("DALY"), a former securities representative for the DEBTOR, prior to the filing of the bankruptcy petition. The DEBTOR'S attorney has acknowledged that the relief sought is not against RAQUEL, personally, but only against her attorneys.

The DEBTOR corporation, a multi-state securities broker/dealer, is a wholly owned subsidiary of Illinois Mutual Life Insurance Company ("ILLINOIS MUTUAL"). The DEBTOR'S officers and directors are:

John Richard Cislaghi, Vice President and Director; Robert Frederick Pedersen, Secretary & Director; Richard Eugene Vidican, President & Director; Mary Beth Schmidt, Vice President/Compliance Officer; John David Madsen, Financial Officer; John W. Marshall, Director; and Wm. E. Palmatier, Director.

Several federal securities arbitration proceedings were pending against the DEBTOR before the National Association of Securities Dealers ("NASD") when the DEBTOR filed its Chapter 7 petition on February 1, 2002.[1] One of those actions, commenced by RAQUEL against the DEBTOR and DALY in February, 2001, was pending before a NASD panel of arbitrators in Tampa, Florida, with a hearing on the merits scheduled to begin on February 6, 2002. On the same day that the petition was filed, the DEBTOR'S bankruptcy attorney, by facsimile and by registered mail, advised FEDOR, one of RAQUEL'S attorneys, of the bankruptcy filing and of its position that the arbitration proceeding was stayed. FEDOR acknowledges receipt of the facsimile.

On February 4, 2002, Burton W. Wiand ("WIAND"), attorney for the DEBTOR in the arbitration proceeding faxed a letter to the panel, with a copy to FEDOR and LOGSDON, advising of the DEBTOR'S bankruptcy filing, enclosing a copy of the bankruptcy petition, and stating the DEBTOR'S position that the effect of the bankruptcy was to stay the entire arbitration case including any action with respect to discovery directed to ILLINOIS MUTUAL.

On February 5, 2002, FEDOR and LOGSDON prepared and forwarded to the NASD arbitration panel two subpoenas

---

1. In its Statement of Affairs, the DEBTOR listed three other actions pending before the NASD and one lawsuit pending in state court.

In their application for attorney fees, counsel for the DEBTOR referenced that other claims may yet be unfiled.

duces tecum for issuance in RAQUEL'S case. One was directed to the Custodian of Records of ILLINOIS MUTUAL seeking production of eleven (11) categories of documents of wide-ranging scope relating to the DEBTOR and individuals in control of the DEBTOR. The second subpoena was directed to the Custodian of Records of the First National Bank of Joliet ("BANK"), Joliet, Illinois, seeking production of the DEBTOR'S bank account records. That same day, FEDOR faxed a letter to the arbitrators advising them that the DEBTOR had filed a Chapter 7 bankruptcy petition on February 1, 2002, and requesting postponement of the scheduled hearings, leave to file an amended claim, and leave to conduct discovery against ILLINOIS MUTUAL. On February 6, 2002, WIAND faxed a letter to the panel objecting to FEDOR'S request as to the ILLINOIS MUTUAL discovery on jurisdictional grounds but omitting any reference to the DEBTOR'S bankruptcy filing or the automatic stay. That same day, a staff attorney for the NASD faxed a letter to the panel enclosing WIAND'S letter and advising that FEDOR "wishes to go forward with the hearing as scheduled as to Respondent DALY, thenon-filing party." Later that same day, the panel issued the two subpoenas and its order granting postponement of the hearings and leave to file an amended claim, to be filed by March 15, 2002. It appears from the record that the subpoenas were never served.

RAQUEL filed her amended statement of claim in the arbitration proceeding on March 14, 2002, excluding the DEBTOR as a named respondent because of its bankruptcy filing, and adding Richard Eugene Vatican, Stephen Wesley Bracken, Mark J. Geregach, Robert Frederick Pedersen, Dennis Lee Sluski, John Richard Cislaghi, and James Scroggins as "Control Persons," alleging that they failed to properly supervise DALY and insure compliance with the rules and regulations of the NASD and other applicable law.[2]

On February 7, 2002, the DEBTOR filed a motion in this Court for RAQUEL and FEDOR to show cause why they are pursuing the arbitration proceeding against the DEBTOR and/or its principal shareholder in violation of the automatic stay. This Court scheduled a hearing on the DEBTOR'S motion to show cause on March 11, 2002. Neither FEDOR nor RAQUEL appeared at the hearing, and the Court continued the matter to May 13, 2002, scheduling a telephonic hearing, for the convenience of FEDOR. FEDOR filed a response to the DEBTOR'S motion on March 7, 2002, asserting his position that the automatic stay only applied to conduct directed at the DEBTOR and alleging that the subpoenas and the motion for leave to amend were intended to facilitate the substitution of the DEBTOR'S "control persons" in the DEBTOR'S stead as parties defendant, and, therefore, did not violate the automatic stay. FEDOR'S response also asserts that he orally advised the panel on February 6, 2002, that RAQUEL was stayed from proceeding against the DEBTOR because of its bankruptcy filing. In addition, the response states that the purpose for the subpoena to ILLINOIS MUTUAL was to identify the control persons and any insurance coverage. The purpose for the BANK subpoena was to ascertain what happened to the DEBTOR'S assets and to identify possible fraudulent transfers.

On April 5, 2002, the DEBTOR filed a supplemental motion against RAQUEL, FEDOR and LOGSDON to show cause why they are pursuing the arbitration pro-

---

**2.** ILLINOIS MUTUAL, admittedly a "control person," was not named as a respondent in the arbitration because it was not a member of the NASD.

ceeding against the DEBTOR and its control persons, whom the DEBTOR alleges are also protected by the automatic stay. Acknowledging that corporations may not recover damages pursuant to Section 362(h), the supplemental motion seeks relief under Section 105 of the Bankruptcy Code. Thereafter, FEDOR and LOGSDON hired local counsel to represent them in the bankruptcy case. Their counsel filed a response to the supplemental motion on June 21, 2002, emphasizing the following:

1. The postpetition action taken in the arbitration case was not directed against the DEBTOR or any assets of the estate.

2. Although documents from other parties have been subpoenaed, the DEBTOR has not been subpoenaed.

3. The DEBTOR'S bankruptcy case is under Chapter 7 and the DEBTOR is not attempting to reorganize so there is no reason to extend the stay to non-debtor third parties.

4. It is irrelevant that those third parties may have a claim for indemnification against the DEBTOR.

The DEBTOR contends that the automatic stay of Section 362 applies not only to the arbitration proceeding as against the DEBTOR, but also to those non-debtor third parties entitled to indemnity by the DEBTOR, asserting that any recovery against them will, in essence, be against the DEBTOR because it is required to indemnify its officers and directors under its by-laws. It is unclear in this case if the DEBTOR has an insurance policy indemnifying its directors and officers, and, if so, whether the policy also indemnifies the corporation.[3] The DEBTOR argues that the Court has authority under Section 105

to extend the automatic stay to non-debtor third parties and to award the DEBTOR attorney fees and punitive damages, even though Section 362(h) does not permit a corporation to recover such damages.

## ANALYSIS

■ The application of the automatic stay to pending legal proceedings is set forth in Section 362(a)(1), which provides that the filing of a bankruptcy petition:

(a) [O]perates as a stay, applicable to all entities, of–

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The stay applies equally to arbitration proceedings as it does to judicial proceedings. *In re Knightsbridge Development Co. Inc.,* 884 F.2d 145 (4th Cir.1989).

■ Early in the life of the Bankruptcy Code, several courts opined that the automatic stay triggered by the bankruptcy filing of one of multiple defendants to a lawsuit enjoined the entire suit, at least where the claims were interrelated. *Federal Life Ins. Co. v. First Financial Group of Texas, Inc.,* 3 B.R. 375 (S.D.Tex.1980); *In re White Motor Credit Corp.,* 11 B.R. 294 (Bankr.N.D.Ohio 1981), *rev'd on other grounds,* 23 B.R. 276 (N.D.Ohio 1982). That interpretation never gained much traction, however, and the overwhelming majority of courts have held that the law-

---

**3.** Listed as an asset on Schedule B is a "Securities/Broker/Dealer Preferred Liability Insurance" policy issued by American International Specialty Insurance Company, with the value listed as unknown.

suit is only stayed as to the bankrupt party, not as to the non-bankrupt codefendants. *Pitts v. Unarco Industries, Inc.,* 698 F.2d 313, (7th Cir.1983); *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena, S.A.,* 10 B.R. 488 (N.D.Ill.1981); *Sav-A-Trip, Inc. v. Belfort,* 164 F.3d 1137 (8th Cir.1999); *In re Miller,* 262 B.R. 499 (9th Cir. BAP 2001); *Lukas, Nace, Gutierrez & Sachs, Chartered v. Havens,* 245 B.R. 180 (D.D.C.2000).

■ The DEBTOR suggests that the stay should be extended to protect its control persons, relying primarily on *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986). Like most courts, this Court views that doctrine as one to be narrowly construed, appropriate only in extremely unusual circumstances. *Arnold v. Garlock, Inc.,* 278 F.3d 426 (5th Cir. 2001); *Parry v. Mohawk Motors of Michigan, Inc.,* 236 F.3d 299 (6th Cir.2000). The Court does not view this case as one within that narrow exception. *See, In re Sunbeam Securities Litigation,* 261 B.R. 534 (S.D.Fla.2001) (denying extension of stay to debtor's officers and directors despite indemnification claims).

■ Even where unusual circumstances exist, extension of the stay to nonbankrupt parties is not automatic and must be requested affirmatively by the debtor. *C.H. Robinson Co. v. Paris & Sons, Inc.,* 180 F.Supp.2d 1002 (N.D.Iowa 2001). A request for such an extension must be made by adversary proceeding. *In re Hillsborough Holdings Corp.,* 130 B.R. 603 (Bankr.M.D.Fla.1991). An adversary complaint has not been filed and the issue is not properly before the Court.

■ Following these authorities, the request for leave to amend RAQUEL'S arbitration claim to exclude the DEBTOR and to add its control persons, and the filing of such an amended claim, were not actions

taken against the DEBTOR, and the automatic stay does not preclude such actions.

FEDOR and LOGSDON do not dispute that the arbitration proceeding was stayed as to the DEBTOR. They contend, however, that the subpoenas they prepared were not intended to advance RAQUEL'S claim against the DEBTOR, but were intended largely to identify potentially liable third parties so that the focus of the arbitration could be shifted away from the DEBTOR. They argue that their actions in submitting the subpoenas to the panel, although taken within the arbitration proceeding, were not "against the debtor" and are outside the scope of the automatic stay.

■ Although in this Court's view, there are valid arguments to the contrary, it is now generally accepted that discovery pertaining to claims against the bankrupt's codefendants is not stayed, even if the discovery requires a response from the debtor, and even if the information discovered could later be used against the debtor. *In re Miller,* 262 B.R. 499 (9th Cir. BAP 2001); *Matter of Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation,* 140 B.R. 969 (N.D.Ill.1992); *In re Hillsborough Holdings Corp.,* 130 B.R. 603 (Bankr.M.D.Fla.1991). *Contra, In re Manown,* 213 B.R. 411 (Bankr.N.D.Ga.1997). Following the majority rule, those portions of the subpoenas aimed at identifying the DEBTOR'S control persons did not violate the automatic stay.

■ However, both the BANK subpoena and the ILLINOIS MUTUAL subpoena, in part, sought to obtain documents evidencing the prepetition transfer of assets by the DEBTOR for the purpose of identifying possible fraudulent conveyances. The Court fails to see how this information is related to the claims against DALY and the DEBTOR'S control per-

sons. Instead, it would appear that those portions of the subpoenas were directed against the DEBTOR, not the DEBTOR'S codefendants. *See, In re Colonial Realty Co.,* 980 F.2d 125, 131–32 (2nd Cir.1992) (any attempt to recover property fraudulently transferred by a debtor is stayed as an attempt to recover a claim against the debtor, even where debtor is not named defendant).

FEDOR and LOGSDON argue that they are not bankruptcy lawyers and are unfamiliar with the nuances of the automatic stay, that they believed their actions were not stayed, and that, if anything, the violations were inadvertent and not willful. Further, during the telephonic hearing held on May 13, 2002, both FEDOR and LOGSDON stated that the subpoenas were never issued.[4] Their position is supported by the documents in the record. It appears to the Court that FEDOR advised the arbitration panel of the DEBTOR'S filing within a few days of learning of it. Although he indicated an intent to continue the proceeding against DALY, FEDOR'S actions indicate that he realized he could no longer proceed against the DEBTOR. He moved to continue the trial, to dismiss the DEBTOR as a respondent, and to substitute the control persons as respondents so that RAQUEL'S action might continue against the non-debtor third parties. Given that most courts agree that multi-defendant litigation is not stayed as to non-bankrupt parties, and FEDOR and LOGSDON'S conduct was premised on that same assumption, the Court cannot say that their conduct was willful. And although the subpoenas were, in part, directed against the DEBTOR, they were never served. Because their use was only contemplated, but never effected, and in light of all of the circumstances, the Court cannot conclude that FEDOR and LOGSDON wilfully violated the automatic stay. Accordingly, it is not necessary to address the question of damages under Section 105.

■ Of course, all this trouble might have been avoided had FEDOR and LOGSDON simply moved for relief from the automatic stay in February, 2002. Despite how most courts construe the scope of the stay, this Court believes that the better procedure is to raise the issue of the continuation of pending multi-defendant litigation with the bankruptcy court as soon as possible. The bankruptcy court is the proper forum to address whether the litigation may proceed without adversely affecting the bankruptcy case and whether, for valid bankruptcy reasons, the litigation ought to go forward against the debtor as well as the non-debtor codefendants.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered denying the DEBTOR'S Motion and Amended Motion.

---

4. Copies of both subpoenas are attached to the DEBTOR'S motion filed February 7, 2002. They are signed by William F. Glaser as Chairman of the NASD Arbitration Panel and dated 2–6–02. In light of these copies, the Court interprets FEDOR and LOGSDON'S statements that the subpoenas were never "issued" to mean that they were never served on the BANK or ILLINOIS MUTUAL.